|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | **PRIORITY SEND**<br>JS-6 |

CIVIL MINUTES -- GENERAL

Case No.     **CV 11-7417-JFW (CWx)**                                    Date:  November 4, 2011

Title:          Kevin Shenkman, et al. -v- All Market, Inc.

**PRESENT:**

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**            **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                                                                              None

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING PLAINTIFF'S MOTION TO
                                                                   REMAND [filed 10/04/11; Docket No. 18]

On October 4, 2011, Plaintiff Kevin Shenkman ("Plaintiff") filed a Motion to Remand. On October 17, 2011, Defendant All Market, Inc., d/b/a Vita Coca ("Defendant") filed its Opposition. On October 24, 2011, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for November 7, 2011 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**

On August 8, 2011, Plaintiff filed this action against Defendant in Los Angeles Superior Court, on behalf of himself and a similarly situated class, and alleges the following claims for relief: (1) intentional misrepresentation; (2) negligent misrepresentation; (3) fraud; (4) violation of California's False Advertising Act, California Business & Professions Code §§ 17500, *et seq.*; and (5) violation of California's Unfair Business Practices Act, California Business & Professions Code §§ 17200, *et seq.*

On September 9, 2011, Defendant filed a Notice of Removal, alleging that the amount in controversy exceeds $5,000,000, and that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff moves to remand this action on the grounds that Defendant has failed to prove diversity of citizenship between the parties and has failed to meet its burden of establishing that the total amount in controversy exceeds $5,000,000.

## II.   Legal Standard

A motion to remand is the proper procedure for challenging removal.  *See N. Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir.1995).  The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999).  Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal.  *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."*).*

"A civil action in state court may be removed to federal district court if the district court has 'original jurisdiction' over the matter."  *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007).  Under CAFA, a federal district court has subject matter jurisdiction over a class action in which: (1) there are 100 or more proposed class members; (2) at least some of the members of the proposed class have a different citizenship from the defendant; and (3) the aggregated claims of the proposed class members exceed the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d).  "'[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.'" *Lowdermilk v. U.S. Bank National* Ass'n, 479 F.3d 994, 997 (9th Cir. 2007) (quoting *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir.2006) (per curiam)).

## III.   Discussion

In his Complaint, Plaintiff does not specify the amount of damages sought by the proposed class members.  In its Notice of Removal, Defendant alleges that the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  However, Defendant's calculations of the amount in controversy are based largely on several assumptions that are neither explained nor supported by evidence.  For example, Defendant simply states in its Notice of Removal that "gross sales revenues obtained by Defendant from Defendant's sale of Vita Coca 100% Pure Coconut Water ("Coconut Water") in California was in excess of $8,500,000."  Notice of Removal, ¶ 22.  Defendant then concludes that because "Plaintiff contends that Defendant owes Plaintiff and the members of the putative class 'disgorgement and restitution of all monies wrongfully obtained and retained by Defendant' (Compl. ¶ 13), the amount-in-controversy in this case thus exceeds $5,000,000."  *Id.*, ¶ 23.  Thus, Defendant has simply assumed that damages in this case somehow equate to the gross sales revenue of Coconut Water in California during the relevant class period.

However, Plaintiff's Complaint specifically limits the class to "California residents who purchased 'Vita Coco 100% Pure Coconut Water' within the State of California" and "who were exposed to [Defendant's] concealment and/or misrepresentations of the fact that 'Vita Coco 100% Pure Coconut Water' was deficient in one or more of the claimed amounts of the nutrients on its label and/or its hydration claims."  Defendant's assumption that its gross sales revenue from Coconut Water in California is equivalent to restitutionary relief for the defined class fails to account for: (1) sales of Coconut Water in California to non-California residents; (2) sales of Coconut Water to California residents who were not exposed to or aware of Defendant's nutritional claims; and (3) sales of Coconut Water to California residents who were exposed to Defendant's nutritional claims,

knew those claims to be false, and, thus, were not misled by them.  *See, e.g., Murphy v. Reebok International, Ltd.*, 2011 WL 1559234, *2 (E.D. Ark. Apr. 22, 2011) (holding that Reebok's claim of $100,000,000 in nationwide sales meant little in light of the plaintiff's claim for disgorgement of profits, particularly because Reebok did not distinguish what percentage of sales were made in Arkansas).  Therefore, Defendant has failed to demonstrate that the amount in controversy in this case will be in excess of $5,000,000.

In addition, the only evidence Defendant submits in support of its gross sales revenue calculations are the declarations of Michael Kiran, Defendant's Chief Executive Officer, and Jose A. Carvalho, Defendant's Chief Financial Officer.  However, neither Mr. Kiran or Mr. Carvalho states that he has reviewed any records pertaining to the amount of retail sales during the relevant periods, neither Mr. Kiran or Mr. Carvalho attaches any spreadsheets or other documents establishing Defendant's sales revenue during the relevant period, and neither Mr. Kiran or Mr. Carvalho explains how the gross sales revenue was calculated.[1]

Such conclusory allegations and assumptions do not establish by a preponderance of the evidence that the amount in controversy is satisfied.  *Abrego Abrego*, *supra*, 443 F.3d at 683.  Accordingly, the Court finds that Defendant has failed to meet its burden to establish subject matter jurisdiction under 28 U.S.C. § 1332(d).

## IV.   Conclusion

For all the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**.  This action is hereby **REMANDED** to Los Angeles Superior Court.  *See* 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[1]  While Mr. Carvalho states that his gross sales revenue figure reflects the "average mark-up from retailers and distributors less an average promotional pricing discount applicable" to Coconut Water, Mr. Carvalho fails to explain what those averages are or how they were calculated.